IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMERICAN NATIONAL BANK OF FREMONT, a National Bank,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC CAPITAL CORPORATION,<br><br>Defendant. | 8:06CV577<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendant General Electric Capital Corporation's ("GE") motion for summary judgment, Filing No. 12, and plaintiff American National Bank of Fremont's ("American National") motion for summary judgment, Filing No. 18.

Thomas Herink ("Thomas Herink") was the sole member and manager of Herink Farms LLC ("Herink Farms") as well as the president of Golf Services Group, Inc. ("Golf Services"), a Nebraska corporation. On June 15, 2004, Golf Services entered into a rental contract with Komatsu Equipment Corporation ("Komatsu"), and leased an excavator and 42-inch Komex bucket. At that time, Golf Services remained in debt to several creditors and sought a consolidation loan from TFS Capital Funding, General Electric Capital Corporation's predecessor. One such creditor, American National, a National Banking Association with a principal place of business in Fremont, Nebraska, held a blanket lien on Golf Services' personal property, including the Komatsu excavator at issue.

On November 30, 2004, American National wrote a letter to TFS Capital Funding agreeing to terminate its liens on Golf Services' property in exchange for payment of $2,688,027.25. Filing No. 14, pp. 9-10. Attached to this letter is a list of property items

upon which American National would relinquish its interest. Filing No. 14, pp. 11-16. Included in the list is the excavator; the bucket is not included as a separate item. *Id.* at 11. In December 2004, TFS Capital Funding providing financing to Golf Services to pay off and consolidate Golf Services' debt. TFS Capital Funding and Golf Services executed a note and security agreement indicating that TFS Capital Funding took a security interest in many items of Golf Services' equipment, including the excavator. Filing No. 14, pp. 18-36. TFS Capital Funding then filed a financing statement with the Nebraska Secretary of State on December 7, 2004, indicating Golf Services as the debtor, TFS Capital Funding as the secured party, and the excavator as the secured collateral. Filing No. 14, pp. 37-39. TFS Capital Funding's loan satisfied Golf Services debt to American National, and as promised, American National terminated its security interests on all of Golf Services' assets, including the excavator.

In May 2005, Herink Farms received a loan from American National in the amount of $160,000.00 to purchase the excavator and bucket. On May 27, 2005, Golf Services issued a check to Komatsu in the amount of $148,240.10. A June 1, 2005 Komatsu invoice reflects the sale and delivery of the excavator to Golf Services in the amount of $148,500.28. On June 8, 2005, Herink Farms and Thomas Herink executed a promissory note[1] and security agreement[2] granting American National a security interest in the excavator and bucket. On June 9, 2005, American National filed a financing statement with the Nebraska Secretary of State indicating Herink Farms as the debtor, American National as the secured party, and the excavator and bucket as the covered property.

---

[1] Filing No. 1, pp. 10-11.

[2] Filing No. 1, pp. 12-16.

Filing No. 1, pp. 12-18.  On that same day, the $160,000.00 loan from American National was deposited into Herink Farms' bank account at American National.  Thomas Herink then transferred $160,000 from Herink Farms' bank account to Golf Services' bank account.[3]

Herink Farms thereafter defaulted on the promissory note payments and assigned all rights, title, and interest to the Komatsu excavator and Komex bucket to American National.  American National contends that following Herink Farms' default, GE (formerly TFS Capital Funding) wrongfully took possession of the excavator and bucket and without notice to American National or Herink Farms, sold the equipment for $105,000.00.  American National brought suit in the District Court of Dodge County, Nebraska against GE, a Delaware corporation with a principal place of business in Connecticut.  Filing No. 1, pp. 7-9.  American National asserts that with the proceeds of the promissory note, Herink Farms acquired the Komatsu excavator and 42-inch Komex bucket at issue.  By virtue of the promissory note, security agreement, and financing statement filed with the Nebraska Secretary of State, American National claims a purchase money security interest ("PMSI") in the excavator and bucket, that trumps any other interest held by GE.

In its complaint, American National maintains that GE wrongfully exerted dominion over the excavator and bucket, thereby depriving American National of its property and causing American National damage.  American National further maintains that the excavator and bucket have a fair market value of not less than $160,000.00, and GE has refused to pay American National this sum or deliver possession of the excavator and

---

[3]Golf Services had drawn on its line of credit to ensure payment of the May 27, 2005, $148,240.10 check.  The parties disagree over the reasons for the transfer of funds from Herink Farms' account to Golf Services' account.

3

bucket. American National requests return of the equipment or judgment in the amount of not less than $160,000.00.

Pursuant to 28 U.S.C. § 1446, GE removed the action to this court alleging diversity of citizenship under 28 U.S.C. § 1332 and removal jurisdiction under section 1441(a). Filing No. 1. GE then filed an answer and counterclaim. Filing No. 5. According to GE, the promissory note and security agreement between Golf Services and GE's predecessor, TFS Capital Funding, granted TFS Capital Funding a security interest in the excavator and bucket. Such interest was perfected by filing a financing statement, and TFS Capital Funding then assigned the note and security agreement to GE, granting GE the perfected security interest. GE maintains that Herink Farms' purchase of the excavator and bucket was subject to GE's security interest in the equipment. GE took possession of the equipment pursuant to the District Court of Sarpy County, Nebraska's order for delivery, dated February 3, 2006, and judgment of the same court dated March 17, 2006. In its counterclaim, GE asks that this court enter judgment declaring GE entitled to priority over any other security interests, namely American National's security interest, and award costs of this action.

**Legal Standards**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). Where unresolved issues are primarily legal rather than factual,

summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While courts evaluate facts in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999). In ruling on a motion for

summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**Analysis**

Although the summary judgment briefs shed additional light on the relationships between the parties and events as they occurred, the court remains concerned about several aspects of the story and timeline as it relates to filing, perfection, and the security interests at issue. The first known facts can be summarized as this: Golf Services leases an excavator from Komatsu; Golf Services has a debt with American National and American National held a blanket lien on Golf Services' property; TFS Capital Funding provides Golf Services with a consolidation loan and the parties execute a security agreement granting TFS Capital Funding a first priority security interest in Golf Services' equipment; TFS Capital Funding files a financing statement on December 7, 2004.

The December 7 financing statement indicates that Golf Services is the debtor, TFS Capital Funding is the secured party, and included as secured collateral is the excavator at issue. Filing No. 14, pp. 37-39. According to the security agreement executed by TFS Capital Funding and Golf Services, Golf Services "represents, warrants and covenants to [TFS Capital] that as of the date of, and throughout the term of, this Agreement: (i) the Collateral is, and will remain, free and clear of all levies, liens and encumbrances of every kind, nature and description, except for the lien of this Agreement[.]" Filing No. 14, p. 20, ¶ 7 (d). The security agreement further provides that as security for the payment of Golf Services' obligations and liabilities, Golf Services assigns a "continuing first perfected security interest in the property described in Exhibit A" to TFS Capital Funding. Filing No. 14, p. 19, ¶ 6.

6

At first glance, it would seem that TFS Capital, now GE, holds a first perfected security interest in the excavator, as the excavator is listed in Exhibit A to the security agreement.  Filing No. 14, p. 26.  However, the problem with this sequence of events is that at the time Golf Services executed the security agreement with TFS Capital Funding, Golf Services leased the excavator from Komatsu, and therefore, the excavator was not "free and clear of all levies, liens and encumbrances of every kind, nature and description."

A lease is defined in the Nebraska Uniform Commercial Code ("U.C.C.") as "the right to possession and use of goods for a term in return for consideration[.]"  Neb. Rev. Stat. U.C.C. § 2A-103 (1)(j) (2007).  A "security interest," by contrast, is "an interest in personal property or fixtures which secures payment or performance of an obligation."  Neb. Rev. Stat. U.C.C. § 1-201 (35) (2007).  Nebraska U.C.C. Section 2A-307 sets forth a general rule of priority that a creditor of a lessee takes subject to the lease contract.  Neb. Rev. Stat. U.C.C. § 2A-307 (2007).  Moreover, a security interest is enforceable against the debtor and third parties only if the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.  Neb. Rev. Stat. U.C.C. § 9-203.

In this case, the terms of the excavator rental relationship between Golf Services and Komatsu are not in evidence, and Komatsu is not a party to the case at bar.  *See* Donald L. Swanson Affidavit, Filing No. 16, pp. 30-33.[4]  From the facts alleged, we know that in exchange for rent payments to Komatsu, Golf Services got to keep and use the leased excavator for a specified period of time.  We also know that Golf Services purchased the excavator from Komatsu on May 27, 2005.  A lessee acquires no semblance of title or ownership, but Golf Services granted American National a blanket lien

---

[4]The rental agreement is attached to Donald L. Swanson's affidavit, but if terms are included in this agreement, the terms are illegible.

7

on its property, and then to terminate that lien, granted TFS Capital Funding a security interest in, among other collateral, a leased excavator. In other words, TFS Capital Funding, a subsequent creditor of Golf Services, took a security interest in the excavator subject to the lease contract. *See* Neb. Rev. Stat. U.C.C. § 2A-307 (2007). At this stage of the proceedings, it remains unclear whether the debtor, Golf Services, had rights in the excavator or the power to transfer rights in the excavator to TFS Capital Funding. Neb. Rev. Stat. U.C.C. § 9-203.

GE maintains that "even if GE did not have a security interest in the [e]xcavator while Golf Services rented it, the security interest of GE in the [e]xcavator attached when Golf Services purchased the [e]xcavator." Filing No. 13. But to make matters more complicated, it remains disputed who purchased the excavator and with what funds. The Komatsu invoice reflects that Golf Services is the purchaser of the excavator, but the parties disagree whether Golf Services' funds were used or whether the loan advanced by American National to Herink Farms funded the excavator purchase. Also at issue is the timing of such events: the loan occurred to Herink Farms before Golf Services issued the check to Komatsu; Komatsu allegedly delivered the excavator to Golf Services on June 1, 2005, but on June 8, 2005, Herink Farms and Thomas Herink execute a promissory note and security agreement granting American National a security interest in the same excavator and bucket. The parties then disagree over whether a line of credit insured payment to Komatsu, or whether it was the subsequent transfer of funds from the Herink Farms account to Golf Services' account.

The discrepancies concerning who purchased the excavator and with what monies is relevant to determine whether American National has a purchase money security interest

in the excavator. A purchase money security interest ("PMSI") exists when an obligor incurs an obligation for goods as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used. Neb. Rev. Stat. U.C.C. § 9-103 (2007). Whether American National holds a purchase money security interest in the excavator is determinative of priority. Without a fully developed record, the court cannot determine the priority of secured interests. Accordingly, the court finds that summary judgment should be denied.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 12, and plaintiff's motion for summary judgment, Filing No. 18, are denied.

DATED this 20th day of August, 2007.

BY THE COURT:

s/Joseph F. Bataillon
Chief United States District Judge